T. J. BARRETT v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 15 December, 1926.)

**Master and Servant—Employer and Employee—Negligence—Safe Place to Work—Helpers—Evidence—Nonsuit—Questions for Jury.**

It is the nondelegable duty of the master to reasonably furnish the necessary helpers for the servant to work in the course of his employment, as well as to furnish him a safe place to work and reasonably

safe tools and appliances therefor, and where there is evidence that the servant was engaged for the defendant railroad company in repairing a refrigerator car by bolting a heavy oaken plank on to its end, requiring assistance to do so, and which was customarily furnished, and that he attempted to do the work alone, under the instructions of the defendant's vice-principal, it is sufficient to take the case to the jury upon the issue of defendant's actionable negligence, and to deny its motion as of nonsuit.

APPEAL by plaintiff from *Schenck, J.,* at May Term, 1926, of RICH-MOND. Reversed.

The necessary facts will be set forth in the opinion.

*W. R. Jones, John C. Sikes and Stewart, McRae & Bobbitt for plaintiff.*
*Varser, Lawrence, Proctor & McIntyre for defendant.*

CLARKSON, J. This is an action for actionable negligence brought by plaintiff against the defendant for injuries alleged to have been sustained by him. The defendant introduced no evidence and at the close of plaintiff's evidence made a motion for judgment as in case of nonsuit. C. S., 567. This motion was sustained by the court below. Plaintiff assigned error and appealed to this Court.

The testimony of plaintiff was to the effect: That on 2 January, 1924, he was engaged in car-repairing work for defendant at Hamlet. That he was directed by the foreman of defendant to make repairs on a refrigerator car. There was an end sill to be put in and plaintiff asked the foreman for some help, as he could not do it without help, but the foreman said he had no one to help him and directed him to do the work. The work to be done was to put in a splice board that went underneath the car; there were bolts to be put in and the board had to be held up. The car was so made that it was too low for him to stand on his knees and a little too high to sit down flat to do the work, so the work had to be done in a leaning position and it required a lot of strain to hold the board up. The bolts were 8 inch to go in and they had to be pushed up pretty hard and the plank had to be held, and one man could not do it by himself. At the time he was trying to do it, a pain struck him in the back, he dropped everything and the board fell on him and he could not move; it paralyzed him. The board was heavy, hard oak, 2x9 inches, 6 feet long. He could not get the bolts in with his hand. They were too close to push in. He could not get the hammer in between the bolts. He was trying to push them in but he could not do it. Sometimes they had to take a jimmy bar and prize those bolts. One man had to hold while the other did it. The foreman did not give him any helper to do this work. His body gave way, and he fell to the ground and the board fell upon him.

H. C. McRae, for plaintiff, testified: "Have worked for defendant off and on for the last eight years, repaired cars, put on splice boards, know custom of the defendant and that it was the custom in January, 1924, to furnish a helper to a carman who was required to put on a hardwood splice board two inches thick, nine inches wide and six feet long, on a refrigerator car. Plaintiff's reputation is good. (Cross-examination): I have never put a splice board on by myself. It would be hard to do, I never done it. If you could get a bolt through it would hold the splice board up, but sometimes it is hard to get the one bolt through. Sometimes they fit and sometimes they don't."

Plaintiff introduced several other witnesses who testified substantially the same.

In *Pigford v. R. R.,* 160 N. C., at p. 101, speaking to the subject, citing numerous cases, this Court said: "It is as much the duty of the master to exercise care in providing the servant with reasonably safe means and methods of work, such as proper assistance for performing his task, as it is to furnish him a safe place and proper tools and appliances. The one is just as much a primary, absolute, and nondelegable duty as the other. When he entrusts the control of his hands to another, he thereby appoints him in his own place, and is responsible for the proper exercise of the delegated authority, and liable for any abuse of it to the same extent as if he had been personally present and acting in that behalf himself. This principle is well settled." *Cherry v. R. R.,* 174 N. C., 263; *Hines v. R. R.,* 185 N. C., 72; *Crisp v. Thread Mills,* 189 N. C., 89; *Bradford v. English,* 190 N. C., 742; *Johnson v. R. R.,* 191 N. C., 75; *Clinard v. Clinard Elec. Co., post,* 736.

In cases of this kind against a railroad corporation, contributory negligence is no bar to the action—this is made so by statute, C. S., 3467. "The damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." With respect to the plea of assumption of risk, C. S., 3468, is as follows: "In an action brought against any common carrier under or by virtue of any of the provisions of this article to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risk of his employment, in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee, or the death or injury was caused by negligence."

On a motion to nonsuit, the evidence is to be taken in the light most favorable to plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom.

We think the evidence was sufficient to be submitted to the jury.

Reversed.